UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Russell A. Johnson,

      Plaintiff,

              Civ. No. 04-2638 (RHK/AJB)
              **MEMORANDUM OPINION**
              **AND ORDER**

v.

The Burlington Northern and Santa Fe
Railroad Company,

      Defendant.

---

Gregg M. Corwin, Gregg M. Corwin & Associates Law Office, P.C., St. Louis Park, Minnesota, for Plaintiff.

Rodney A. Honkanen, Spence, Ricke, Sweeney and Gernes, PA, St. Paul, Minnesota, for Defendant.

---

## Introduction

   Plaintiff Russell Johnson has sued his employer, Defendant Burlington Northern & Santa Fe Railway Company ("BNSF") for sexual harassment under Title VII and the Minnesota Human Rights Act ("MHRA"). He claims that he was subjected to a hostile work environment for a period of approximately four years due to graffiti that appeared throughout that time in the men's bathroom at his office building. BNSF has now moved for summary judgment on both claims. For the reasons set forth below, the Court will grant the Motion.

## Background

Since August 8, 1978, Johnson has been employed by BNSF. He is currently employed as a conductor based out of BNSF's Northtown Terminal in Minneapolis, Minnesota, and has held that position since 1995. His usual route is between Minneapolis and Dilworth, Minnesota. Johnson reports for work at the 43rd Avenue Crew Office.

In late August 2000, Johnson reported to his supervisor, James Haubrick, that two of his co-workers, Gary Trickle and Larry Svendsen, had violated company policy by inappropriately using his name over the federally regulated radio. Because Haubrick did not respond positively to the report, Johnson immediately took his complaint up the chain of command, to Haubrick's supervisor. Eventually, Joseph Spier, a human resources manager in the Minneapolis office, became his main contact during the course of the events which gave rise to this action.

Johnson claims that "within days" of his report regarding his co-workers' rule violations, "sexually harassing graffiti appeared about [him] in the men's restrooms at the 43rd Avenue Crew Office." (Johnson Aff. ¶ 8.) The Crew Office had two men's restrooms—on the main level and on the lower level. Johnson recounts the following specific instances of graffiti found on the walls of the restrooms[1] (the Court will list each instance by the date on which Johnson found it):

- October 13, 2000, "Russ is a woman" (id. ¶ 10(c));

- October 15, 2000, "R.J. likes to fuck all animals" (id.);

---

[1] Johnson describes his recounting of the specific instances of graffiti as "most of the graffiti." (Johnson Aff. ¶ 10.)

- November 9, 2000, "Russ 'the rat' Johnson" (id. ¶ 10(d));

- November 26, 2000, "Russ the rat no. 1 asshole" (id. ¶ 10(e));

- December 2, 2000, "Russ the rat # asshole" (id. ¶ 10(f));

- Between January 2001 and March 2001, three or four writings referring to Johnson as a "cocksucker" and numerous writings referring to him as a "rat" (id. ¶ 10(h));

- February 26, 2001, "Russ the rat asshole list" and "RAT" intersecting with "RAJ" at the mutual "A" (id. ¶ 10(i));

- April 20, 2001, "Russ the rat has the brain of a child" (id. ¶ 10(k));

- October 13, 2001, "Russ the rat" (id. ¶ 10 (m));

- October 14, 2001, "Russ the rat" and "Russ everybody is talking about you rat bastard" (id.);

- Between November 15 and 20, 2001, "Russ Johnson #1 asshole" (id. ¶ 10(o));

- Late April 2002, "___ is a fuckhead," on May 8, 2002, someone wrote "R.A. Johnson" above the blank (id. ¶ 10(s));

- June 2, 2003, "Russell Johnson is a cocksucker" (id. ¶ 10(z));

- August 31, 2003, "Russ the rat" (id. ¶ 10(bb));

- April 7, 2004, "Russ da rat" (id. ¶ 10(cc));

- September 16, 2004, "Here I sit Russ the rat" (id. ¶ 10(dd)).

Johnson stated that he thought there were "30, 40, 60 writings total." (Johnson Dep. Tr. at 224.) These are the only specific instances of graffiti recounted in the record.[2] He

---

[2] Johnson references a couple of other instances of graffiti, though he does not provide the Court with any details on the content or partial content of that graffiti. (See,

3

spoke to Spier about the graffiti until December 2001, at which time he started dealing directly with BNSF's human resources personnel in its corporate headquarters in Fort Worth, Texas. (Spier Aff. ¶ 10.) According to Johnson, Spier was not consistently responsive to his concerns regarding the graffiti, and Johnson was dissatisfied with BNSF's response to his complaints. In March 2004, BNSF painted the walls in its men's restroom black, and Johnson reports that "[n]o graffiti has been found in the stall areas of the men's restroom since this time." (Johnson Aff. ¶ 10ee.) Johnson states that he "first requested that the bathroom walls be painted black on November 9, 2000." (Id.)

Johnson initially suspected that the perpetrator was either Svendsen or Trickle, the two co-workers whom Johnson reported for policy violations in late August 2000. Examination of Svendsen's and Trickle's schedules, however, eventually ruled them out as perpetrating at least some of the graffiti. Johnson has also suspected Haubrick, his supervisor. He still does not know who was responsible for the graffiti. (Johnson Dep. Tr.

---

e.g., Johnson Aff. ¶ 8 (in late August 2000, Johnson states that "sexually harassing graffiti appeared about [him]" but does not provide information regarding the specific content of that graffiti); id. ¶ 10(u) (Johnson states that, on February 24, 2003, "more sexually harassing graffiti targeted at me appeared on the bathroom walls" but, again, does not state what the content of that graffiti was). Such conclusory allegations are of limited significance to the Court's analysis, as whether or not the graffiti was "sexually harassing" necessarily depends, in part, on the content of the writings. See generally Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1069 (8th Cir. 2005) (looking to "the nature of [the] harassing actions themselves" to determine whether they were "based on sex"); see also Flannery v. Trans World Airlines, Inc., 160 F.3d 425, 428 (8th Cir. 1998) (rejecting retaliation claim where it was only supported by the plaintiff's "conclusory affidavit, which is devoid of any specific factual allegations that, if credited by a trial jury" could support a finding in the plaintiff's favor (emphasis added)).

at 232-33.)

In his deposition, Johnson was asked to describe what he understood the graffiti meant.

- With respect to the "Russ the rat" reference, he stated that "a rat is someone that rats on their fellow employees." (Johnson Dep. Tr. at 90.) He testified that he started being referred to as a "rat" after he had previously turned an employee in for breaking company rules prior to the August 2000 incident involving Trickle and Svendsen. (Id. at 92-93.)

- With respect to "number one asshole," Johnson responded that "[t]he general philosophy among workers is that you don't turn in co-workers . . . if you do that you're ostracized by your co-workers." (Id. at 113.)

- With respect to "Russ is a cocksucker," Johnson responded "I don't really care what they think, to tell you the truth. I don't care." (Id. at 138.) When asked whether he thought that graffiti "related back to their problems with [him] as following the company rules and reporting them," he responded: "It may have been. I haven't initiated any situations. I have reacted to situations caused by other people. That doesn't make me an asshole. I've got a right to defend myself." (Id. at 138-39.)

- With respect to "fuckhead," he responded "[t]hey didn't like me. They wanted to agitate me, provoke me." (Id. at 174-75.) He understands "fuckhead" to be a "derogatory, negative word [that is] used on a daily basis at the railroad and if you never use the word, you hear it so many times at work that it becomes a part of your vocabulary simply because of the nature of the people that you're around." (Id. at 175.)

Generally, Johnson's testimony indicates that he believes he was singled out by multiple coworkers because they did not like him. The following exchange occurred:

Q: Are you aware of anything that would indicate that whoever was doing the writing was doing it because they had any sexual desire for you?
A: That never occurred to me.
Q: You're not aware of anything that indicates that?
A: No.
Q: Are you aware of anything that would indicate that whoever was doing so

5

> was doing so because they did not like men working at BNSF, that they are
> prejudiced against men working at BNSF?
> A: Well, that's 99 percent of the railroad. They were angry at me.
> Q: So I guess the answer is no?
> A: No.

(Id. at 233-34.) When asked what about the graffiti Johnson found threatening, Johnson replied:

> Well, when you're called a cock sucker and it continues and they are
> attacking your sexuality and then it continues for many, many, many months,
> there has got to be an intensity of anger that rises to the level of what else is
> going to happen to me.

(Id. at 235.)

In his affidavit, Johnson expressed another reason regarding why he felt he was harassed:

> I am 54 years old, unmarried and share a living space with my mother. I do
> not participate in my coworker's conversations about sexual exploits or
> criticize homosexuals. I believe the person(s) responsible for the graffiti
> targeted me because I do not fit their vision of "a man's man."

(Johnson Aff. ¶ 13.)

Johnson sued BNSF in state court alleging that he was subjected to a hostile working environment in violation of the MHRA. After BNSF removed the action to this Court, Johnson amended his Complaint to add a claim of hostile work environment under Title VII. BNSF now moves for summary judgment on both claims.

## Standard of Review

Summary judgment is proper if, drawing all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. See Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. See Graves v. Arkansas Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. See Anderson, 477 U.S. at 256; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**Analysis**

   A.   **Hostile Work Environment under Title VII**

Johnson alleges that he was subjected to a hostile work environment in violation of Title VII. Title VII prohibits "an employer" from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . sex." 42 U.S.C. § 2000e-2(a)(1). "Discrimination based on sex which creates a hostile or abusive working environment violates Title VII." McCown v. St. John's Health System, Inc., 349 F.3d 540, 542 (8th Cir. 2003). To state a prima facie case for a claim of sexual discrimination based on a hostile work environment, an employee must show: (1) he

belongs to a protected group; (2) he was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper remedial action. Id.; Pedroza v. Cintas Corp. No. 2, 397 F.3d 1063, 1068 (8th Cir. 2005). The third element, whether the harassment was based on sex, is dispositive of Johnson's Title VII claim.

Johnson argues that the harassment he suffered was based on sex in that "[t]he graffiti targeted [him] because he did not fit his coworker's vision of 'a man's man,'" and because the graffiti "implied that he was a homosexual." (Mem. in Opp'n at 18.) Johnson points to the harassing statements that he was "a woman," "a cocksucker," "a fuckhead," "a rat," and an "asshole." (Id.) He asserts that had he "not been biologically male, he would not have been held to stereotypical male traits and would not have been the target of his coworkers' sexual harassment." (Mem. in Opp'n at 19.)

"The based on sex requirement forces a plaintiff to prove that [he] was the target of harassment because of [his] sex and that the offensive behavior was not merely non-actionable, vulgar behavior." Pedroza, 397 F.3d at 1068. "This distinction exists because 'Title VII does not prohibit all verbal or physical harassment in the workplace' and is not 'a general civility code for the American workplace.'" Id. (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)). "Consequently, to succeed on a hostile work environment claim under Title VII, a plaintiff must show that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted

8

discrimination because of sex." Id. (internal quotations and alterations omitted).

There are three recognized, though non-exhaustive, "routes by which a same-sex plaintiff can show that the conduct was based on sex." McCown, 349 F.3d at 543; see Pedroza, 397 F.3d at 1068. A plaintiff can show that (1) the conduct was motivated by sexual desire; (2) the harasser was motivated by a general hostility to the presence of the same gender in the workplace; or (3) the harasser treated males and females in a mixed-sex workplace differently through direct comparative evidence. McCown, 349 F.3d at 543 (citations omitted). There is no support for Johnson's claims under the second or third routes. With respect to the second route, Johnson does not argue, and the evidence does not support, that the harasser was generally hostile to men in the workplace. With respect to the third route, Johnson offers no evidence regarding the comparative treatment of women at BNSF. Therefore, only the first route—whether the conduct was motivated by sexual desire—is at issue.

Viewing the evidence in a light most favorable to Johnson, the Court finds that Johnson has not raised a genuine issue of material fact showing that the conduct was motivated by sexual desire. First, Johnson offers no evidence of the harasser(s)' motivation. He argues that "because BNSF failed to investigate and determine who was doing the harassing, it cannot be said that the responsible individual(s) did not have sexual desire for Johnson." (Mem. in Opp'n at 19.) However, Johnson's "express absence of knowledge is not sufficient to generate a jury question as to whether [the harasser's] conduct constituted discrimination because of sex." McCown, 349 F.3d at 544 (internal

quotation and alteration omitted); see also Linville v. Sears, Roebuck and Co., 335 F.3d 822, 824 (8th Cir. 2003) (holding summary judgment was appropriate in same-sex harassment case where the plaintiff "offered no evidence of [the harasser's] motivation").

Second, having no evidence of motive, Johnson must "rely solely on the nature of [the] harassing actions themselves . . . as evidence that sexual desire motivated [the harasser's] behavior." Pedroza, 397 F.3d at 1069. The Eighth Circuit recently dealt with this issue in some detail in Pedroza. In Pedroza, the Eighth Circuit held that the plaintiff had not established that her claim of same-sex harassment was based on sex. Id. 397 F.3d at 1071. The court looked to the nature of the defendant's harassing actions, such as the defendant grabbing the plaintiff's face and attempting to kiss her on the mouth and cheek, attempting to hold the plaintiff's hand, pointing to her own buttocks and telling the plaintiff to "kiss it," saying to the plaintiff "kiss my ass," blowing kisses at the plaintiff, and saying that she wanted the plaintiff. Id. at 1069. The court also noted that the harasser and the plaintiff "had a generally antagonistic relationship with each other that preceded any allegedly harassing conduct." Id. The court concluded that the harassment suffered by the plaintiff was more analogous to those cases in which the harassment "was tinged with offensive sexual connotations but not suggestive of motivation by sexual desire," id. (internal quotation omitted), and thus the harassment was not based on sex under Title VII.[3]

---

[3] In coming to this conclusion, the court also noted that the harasser was in a heterosexual relationship and had been married in the past, and the plaintiff had a limited ability to understand sarcasm and tended to take statements literally. Pedroza, 397 F.3d at 1069.

10

The facts here present a much less sexually explicit picture than those in Pedroza, and this makes it clear that Johnson cannot show that sexual desire was motivating the harasser(s). The only arguably sexual instances of graffiti—such as, "Russ is a woman," "R.J. likes to fuck all animals," and "Russell Johnson is a cocksucker"—do not evidence sexual desire as a motivator. Rather, the writings represent boorish behavior that was tinged with offensive sexual connotations, which is not sufficient to create a jury question under the based on sex requirement. Pedroza, 397 F.3d at 1069-70.

Third, Johnson himself testified that he did not believe that the harasser(s) were motivated by sexual desire for him. For example, he testified

> Q: Are you aware of anything that would indicate that whoever was doing the writing was doing it because they had any sexual desire for you?
> A: That never occurred to me.
> Q: You're not aware of anything that indicates that?
> A: No."

(Johnson Dep. Tr. at 233.) According to Johnson, the graffiti was occurring because the harasser(s) "were angry at [him]." (Id. at 234.) See McCown, 349 F.3d at 543 (finding that harassment was not based on sex under Title VII, and noting that the plaintiff stated that the harasser "was just trying to 'irritate' him because 'that's just how [the harasser] was'").

Finally, Johnson apparently contends that the harassment was based on his failure to conform to gender stereotypes. Again, Johnson asserts that the "graffiti targeted [him] because he did not fit his coworker's vision of 'a man's man,'" and that, "[h]ad [he] not been biologically male, he would not have been held to stereotypical male traits and would not

11

have been the target of his coworkers' sexual harassment."[4] (Mem. in Opp'n at 18-19.) Johnson has not presented sufficient evidence to create a triable issue of fact regarding whether he was subjected to harassment due to his failure to fit the harasser(s)' vision of "a man's man." The only evidence that could arguably support his argument is the October 13, 2000, writing stating "Russ is a woman." This single incident, in the context of so many other specifically recounted incidents that do not raise an inference that he was being targeted because of his failure to conform to gender stereotypes, is not sufficient to support his Title VII claim.[5]

This is especially so in light of his deposition testimony, which consistently identified his actions involving turning his coworkers in for company policy violations as the motivation behind the graffiti.[6] (See, e.g., Johnson Dep. Tr. at 113 (Q: "What did you

---

[4]Johnson does not support his argument with any authority to the effect that such conduct would, if sufficiently severe and pervasive, state a claim under Title VII. The Court notes, however, that some circuits have recognized that claims of same-sex harassment based on the plaintiff's failure to conform to gender stereotypes are cognizable under Title VII. See, e.g., Medina v. Income Support Div., 413 F.3d 1131, 1135 (10th Cir. 2005) (noting that some courts have held that "a plaintiff may satisfy her evidentiary burden by showing that the harasser was acting to punish the plaintiff's noncompliance with gender stereotypes" (citations omitted)).

[5]While Johnson states that he was unable "to document every instance" of graffiti (Johnson Aff. ¶ 14), he does not clearly state whether there were other unrecorded instances of graffiti specifically labeling him as "a woman," (see, e.g., id. ¶ 11), and if there were, how often it occurred.

[6]The only deposition testimony that the Court is aware of that arguably identifies other possible motivations behind the graffiti is Johnson's statement that the graffiti was "attacking [his] sexuality." (Johnson Dep. Tr. at 235.) Johnson fails to explain exactly why he felt that the graffiti was targeting his sexuality, or what precisely he meant by the term "sexuality." However, even if the evidence supported this perception, it not clear that,

understand the term 'number one asshole' meant?" A: "The general philosophy among workers is that you don't turn in co-workers. . . .").) Courts have rejected Title VII claims alleging harassment based on the plaintiff's failure to conform to gender stereotypes where the evidence shows that the underlying motivation of the alleged harassment was "work-related disputes." See, e.g., Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, 1063-65 (7th Cir. 2003) (rejecting the plaintiff's claim where his allegations were "linked either to his coworkers' perceptions of his work performance or his sexual orientation"); see also Davis v. Costal Int'l Sec., Inc., 275 F.3d 1119, 1123 (D.C. Cir. 2002) (rejecting same-sex harassment claim where the plaintiff's "own testimony conclusively shows that [the harassers] were motivated by a workplace grudge, not sexual attraction").

Construing all facts and drawing all reasonable inferences in Johnson's favor, the evidence shows that the alleged harassment in this action derived from workplace conflicts between Johnson and his coworkers over his practice of turning in coworkers for violating company policies. See Hamm, 332 F.3d at 1065. The conclusory statements in his affidavit regarding his beliefs as to why he was "targeted" by the graffiti are unsupported by the evidence, at odds with his deposition testimony, and simply fail to raise an issue of fact as to this claim. See, e.g., Shanklin v. Fitzgerald, 397 F.3d 596, 603 (8th Cir. 2005) (finding summary judgment appropriate where the plaintiff offers no evidence other than

---

without more, it would establish a claim under Title VII. See Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, 1060, 1065 (7th Cir. 2003) (rejecting plaintiff's Title VII same-sex harassment claim where the evidence showed that some of the harassment was due to the plaintiff's perceived sexual orientation).

her bald assertions). Accordingly, the Court concludes that Johnson's Title VII claim cannot survive summary judgment.

### B. Sexual Harassment under the MHRA

Johnson also alleges that he was subjected to a hostile work environment in violation of the MHRA. "Under the MHRA a plaintiff alleging sexual harassment must prove that the conduct in question satisfies factors detailed in [the statute]." Beach v. Yellow Freight System, 312 F.3d 391, 396 (8th Cir. 2002). "The conduct must be unwelcome, it must consist of sexual advances, requests for sexual favors, sexually motivated physical contact <u>or other verbal or physical conduct or communication of a sexual nature</u>, and it must be sufficiently pervasive so as to substantially interfere with the plaintiff's employment or to create a hostile, intimidating or offensive work environment." Id. (internal quotations omitted) (emphasis added); see Minn. Stat. § 363A.03, subd. 43 (defining "sexual harassment").

#### 1. Communication of a Sexual Nature

Johnson argues that the graffiti satisfies the MHRA's requirement that the communication is "of a sexual nature." (Mem. in Opp'n at 19-20.) Specifically, he argues that the terms "cocksucker," "asshole," and "fuckhead" have clear sexual connotations. (Id.)

The Court determines that some of the graffiti was "of a sexual nature" and some was not. There is no dispute that the two instances of graffiti found in October 2000—stating "Russ is a woman" and "R.J. likes to fuck all animals"—were sexual in

nature. (See Mem. in Supp. at 17.) The Court also determines for purposes of this Motion, that a reasonable jury could conclude that the graffiti referring to Johnson as a "cocksucker" was sexual in nature. See, e.g., Beach, 312 F.3d at 398 (affirming district court's verdict finding same sex harassment under the MHRA where some graffiti stated "[the plaintiff] sucks cock").

With respect to the other instances of graffiti, considering the totality of the circumstances in the instant case, no reasonable jury could conclude that references in the graffiti to Johnson being an "asshole" or a "fuckhead" are sexual in nature. See, e.g., id. (concluding that it was not clear error for the district court to determine that graffiti stating that the plaintiff "sucks" was "not sexual in nature," though expressing that the court "might have made a different finding if [it] had been the trier of fact"). This is bolstered by the fact that almost all of the graffiti that includes the term "asshole" also refers to Johnson as a "rat"—insulting him in a nonsexual way. Cf. Hollen v. USCO Distribution Servs., Inc., 2004 WL 234408, at *4 (D. Minn. Feb. 3, 2004) (considering the circumstances surrounding the use of vulgar terms in concluding they were sexual in nature). Johnson does not allege that the graffiti labeling him as a "rat" was sexual in any way. Further support for this conclusion is found in Johnson's deposition testimony regarding the use of the term "fuckhead" at BNSF, and the lack of any sexual connotation associated therewith.

### 2.    Pervasiveness of the Communication of a Sexual Nature

Having concluded that some of the graffiti regarding Johnson was of a sexual nature under the MHRA, the Court must determine whether that communication was "sufficiently

pervasive so as to substantially interfere with [Johnson's] employment or to create a hostile, intimidating or offensive work environment." Cummings v. Koehnen, 568 N.W.2d 418, 424 (Minn. 1997). "The conduct must be sufficient to create a hostile environment, both as it would be viewed objectively by a reasonable person and as it was actually viewed subjectively by the victim." Beach, 312 F.3d at 397 (internal quotation omitted). In evaluating Johnson's evidence regarding the severity of the harassment, the court must not compartmentalize "the question of harassment," but must consider "the totality of the circumstances." Burns v. McGregor Elec. Indus, Inc., 989 F.2d 959, 961, 964 (8th Cir. 1993) (Title VII claim).

The graffiti of a sexual nature generally occurred at three different times from October 2000 to June 2003, a more than two-and-one-half-year period. In October 2000, two comments of a sexual nature were found. Then, more than two months later, Johnson reports that "cocksucker" appeared in graffiti three or four times.[7] Finally, more than a year after the last instance of graffiti "of a sexual nature," on June 2, 2003, graffiti stating "Russell Johnson is a cocksucker" was found.[8]

---

[7]Johnson does not provide the dates on which this graffiti occurred other than from January to March 2001, despite the fact that he had been recording instances of graffiti during this time period. Furthermore, there is some indication in his notes that the graffiti stopped for a period of time in January and February 2001.

[8]As discussed above, the other instances of graffiti that occurred during this time were not sexual in nature. While Johnson does not explicitly raise this argument, the Court determines that the non-sexual graffiti was not somehow made sexual in nature by the occasional occurrence of graffiti using the term "cocksucker." On the contrary, the Court is of the view that the fact that the vast majority of the graffiti was nonsexual in nature bolsters its conclusion that Johnson has not presented a triable issue of sexual harassment

Johnson relies on <u>Beach</u>, a case in which the Eighth Circuit determined that graffiti of a sexual nature constituted severe and pervasive harassment under the MHRA. 312 F.3d at 397. While there are certain similarities between <u>Beach</u> and the instant action, the Court determines that the facts of <u>Beach</u> are distinguishable in important respects from the evidence presented here.

First, the graffiti in <u>Beach</u> was specifically identified by the Eighth Circuit as being of a "graphic sexual nature," and included statements such as "[the plaintiff] fucks his mother in the ass," "give [the plaintiff] a buck and he'll fuck you in the butt," "[the plaintiff] sucks cock," "[the plaintiff] sucks giant Teamster cocks," "[the plaintiff] sucks giant cocks," and "[the plaintiff] is gay." <u>Id.</u> at 394, 395, 397. Here, a reasonable jury could not conclude that the evidence presented by Johnson is of such a sexually graphic nature. While the graffiti used the term "cocksucker" and on a single occasion stated that Johnson "likes to fuck all animals,"[9] there is nothing in the record approaching the graphic sexual nature and severity of the graffiti in <u>Beach</u>.

Second, the court in <u>Beach</u> also found significant the "pervasive nature of the graffiti." <u>Id.</u> at 397. There was evidence that the graffiti appeared on the company's "trailers, on forklifts, in stairwells, and in the bathrooms . . . ." <u>Id.</u> at 394. Furthermore,

---

under the MHRA. If anything, under the circumstances of this case, the prevalence of the nonsexual graffiti likely weakens his claim that the term "cocksucker" is sexual in nature.

[9]This graffiti, along with that referring to Johnson as "a woman," was "photographed and personally erased" by Spier immediately after Johnson informed him of its existence. (Spier Aff. ¶ 2.)

customers and other employees began to ask the plaintiff about the graffiti, and "[o]ne customer even threatened to stop using [the company's] services if the graffiti in its trailers were not removed." Id. at 397.  Here, the statements that were sexual in nature were not pervasive—after March 2001, there is no evidence that Johnson was confronted with another instance of sexual graffiti until June 2003.  Nor is there evidence of the graffiti proliferating onto surfaces outside of BNSF's bathrooms.

Furthermore, and importantly, in considering "the totality of the circumstances," Burns, 989 F.2d at 964, the picture that emerges is of graffiti that insulted Johnson in a nonsexual way.  In fact, the great majority of the graffiti was directly aimed at Johnson's past acts of turning in his coworkers for violations of company policy.[10]  And, according to his deposition testimony, that is precisely how Johnson perceived much of the harassment—as generally stemming from his decisions to turn in his coworkers.  Accordingly, the Court concludes that Johnson's hostile work environment claim under the MHRA cannot survive summary judgment.

## Conclusion

Based on the foregoing and all the files, records and proceedings herein, it is **ORDERED** that BNSF's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**, and Johnson's Amended Complaint (Doc. No. 15) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

---

[10]This does not excuse the conduct or make it acceptable, but simply places it beyond the reach of the MHRA.

Dated: August  8 , 2005                               s/Richard H. Kyle
                                                      RICHARD H. KYLE
                                                      United States District Judge